IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

NO. 7:11-CV-52-FL

| | | |
|---|---|---|
| TITAN AMERICA, LLC, a Delaware Limited Liability Company, and CAROLINAS CEMENT COMPANY, LLC, a Delaware Limited Liability Company, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | ORDER |
| v. | ) ) | |
| KAYNE O. DARRELL and DAVID L. HILL, | ) ) | |
| Defendants. | ) | |

This matter, wherein plaintiffs assert a single claim for slander, comes before the court on defendants' motion to dismiss (DE # 10), filed May 16, 2011, and on motion filed by the Sierra Club for leave to file amicus brief (DE # 14), filed May 17, 2011, to which defendants consent. The issues raised are ripe for review. For the reasons that follow, defendants' motion to dismiss is denied. The Sierra Club's motion for leave to file amicus brief also is denied.

## BACKGROUND

Plaintiffs Titan America, LLC ("Titan"), and Carolinas Cement Company, LLC ("Carolinas Cement"), are Delaware limited liability companies with principal offices and places of business in Norfolk, Virginia. Titan is engaged in the business of operating cement plants and similar facilities. Carolinas Cement is a subsidiary of Titan.

The well pleaded facts, taken as true and construed in the light most favorable to plaintiffs, are as follows. In April 2008, Carolinas Cement announced plans to construct a new cement plant ("the project") in Castle Hayne, New Hanover County, North Carolina ("the site"). Carolinas

Cement must secure air quality and wetlands mining permits from state and federal regulatory agencies before beginning construction. In July 2007, Carolinas Cement began working with the North Carolina Department of Air Quality ("DAQ") in order to secure an air quality permit. Carolinas Cement submitted its initial application to DAQ in February, 2008, and DAQ began reviewing the application in October, 2008. By the time the application was approved in September 2009, new federal regulations had been proposed which, if finalized, would apply to the project. In May 2010, the new federal regulations were issued, and Carolinas Cement subsequently revised its permit application to meet the new, more stringent requirements.

Plaintiffs allege that, despite the project's potentially enormous economic benefits, a small group of citizens opposing the project have publicly spoken out against the project. Plaintiffs allege that "these extremists have waged their campaign publicly in an attempt to instill fear in the public by aggressively and maliciously misstating facts, making broad and harmful insinuations, and creating and disseminating propaganda materials through baseless public tirades, print media, and most viciously through the Internet." Plaintiffs allege that defendants Kayne Darrell ("Darrell") and David Hill ("Hill"), both residents of New Hanover County, appeared at a regular meeting of the New Hanover County Board of Commissioners on February 1, 2010, and made statements "that were knowingly false and which were made for the purpose of harming [plaintiffs] in their business."

Specifically, plaintiffs allege that Darrell made the following statements:

1. From lawsuits for price fixing and court ordered mine closures of Titan's Florida plant, to allegations of corruption coming from Raleigh, to e-mails raising suspicion whether Titan was ever even considering any other location, which would make incentives completely unnecessary, the clouds of corruption grow dark as new controversies emerge almost daily.

2

> 2. I would like to start by sharing some thoughts that I had while I was at Wrightsville Beach last Sunday. It was an unusually warm day and there were hundreds of people out enjoying the beautiful weather. I suddenly wondered how those people would feel if looking towards their north, their image would be of a forty story smoke stack spewing endless amount of pollutants and toxins into the air they were breathing on that beautiful day.

Am. Compl. ¶ 35. In addition, Hill made the following statements:

> 1. The bottom line is we know from numerous studies that if we build this thing, more children will get sick, a handful of them will die. We also know from the adult studies that more adults will get sick and quite a few more of them are going to die as well. Which ones? Can't tell you. That makes it difficult, but there will be some.
>
> 2. When we consider the cost of this plant, we need to remember that the cost is going to include, for a handful of nameless people, unnecessary death.

Am. Compl. ¶ 41. Plaintiffs allege that the statements were false, were made with actual malice, and were made with knowledge and intent that the statements would be videotaped and rebroadcast.

The statements were, in fact, videotaped. On February 27, 2010, Darrell republished or rebroadcast the videotaped statements over the internet using Darrell's personal YouTube channel, entitled "Citizens Against Titan Cement," which is publicly available. Plaintiffs allege that the video containing Hill's statements has been viewed over 500 times, and that the video containing Darrell's statements has been viewed over 400 times, including as recently as September 21, 2010. Additionally, on March 2, 2010, and March 9, 2010, the video containing Darrell's statements was embedded on the citizens' website, www.stoptitan.org.

Plaintiffs allege that defendants made and republished the statements in order to delay the approval of the permits or to advocate for their denial, to encourage others not to do business with plaintiffs, and otherwise to voice opposition to the project. Plaintiffs allege the statements were calculated to cause, and did cause, injury to plaintiffs in that plaintiffs have incurred damages including lost revenues, lost profits, and damages and other losses due to delays, attorneys' fees, and

3

expert fees. Plaintiffs also allege they have lost income, goodwill, and business opportunities.

## DISCUSSION

A.   Motion to Dismiss

   1.   Standard of Review

A motion to dismiss under Rule 12(b)(6) determines only whether a claim is stated; "it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party v. Martin, 980 F.2d 943, 952 (4th Cir. 1992). A claim is stated if the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). In evaluating whether a claim is stated, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009). Nor will the court accept as true "unwarranted inferences, unreasonable conclusions, or arguments." Wahi v. Charleston Area Med. Ctr., Inc., 562 F.3d 599, 615 n.26 (4th Cir. 2009). In deciding the motion, the court may consider not only the complaint itself and documents attached thereto, see Fed.R.Civ.P. 10(c), but also documents "integral to and explicitly relied on in the complaint" if plaintiffs do not challenge the documents' authenticity. See Phillips v. LCI Intern., Inc., 190 F.3d 609, 618 (4th Cir. 1999).

   2.   Analysis

Plaintiffs contend that defendants' statements constitute slander *per se*. To properly plead a claim for slander *per se*, a complaint must allege that: (1) defendant spoke base or defamatory

4

words which tended to prejudice plaintiff in his reputation, office, trade, business, or means of livelihood or hold him up to disgrace, ridicule, or contempt; (2) the statement was false; and (3) the statement was published or communicated to and understood by a third person. White v. Town of Chapel Hill, 899 F.Supp. 1428, 1438 (M.D.N.C. 1995) (citing West v. King's Dept. Store, Inc., 321 N.C. 698, 703, 365 S.E.2d 621, 624 (1988)).

Here, plaintiffs allege that defendants made statements accusing plaintiffs of corruption in their business practices and suggesting that the new cement plant would kill children. Thus, the first element of slander *per se* is satisfied. The second element likewise is satisfied, as plaintiffs allege unequivocally that the statements were false. Lastly, plaintiffs allege that defendants caused the statements to be broadcast over the internet and viewed hundreds of times, thus satisfying the third element. Plaintiffs accordingly have properly stated a *prima facie* claim for slander *per se*.

Defendants' motion urges dismissal on the basis of multiple affirmative defenses, including truth of the statements, statute of limitations, and constitutional privilege. In ruling on a Rule 12(b)(6) motion, however, the court is to determine only whether a claim is stated, and is not to resolve factual contests or determine the applicability of defenses. Republican Party, 980 F.2d at 952. Indeed:

> a motion to dismiss filed under Federal Rule of Procedure 12(b)(6), which tests the sufficiency of the complaint, generally cannot reach the merits of an affirmative defense . . . [b]ut in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6).

Goodman v. Praxair, Inc., 494 F.3d 458, 464 (4th Cir. 2007). Therefore, the majority of the arguments raised by defendants in support of their motion to dismiss are premature in this posture.

For example, defendants assert entitlement to dismissal pursuant to Rule 12(b)(6) on the

5

basis that the statements are true and thus not actionable. Indeed, truth is a complete defense to a defamation claim. See Food Lion, Inc. v. Capital Cities/ABC, Inc., 194 F.3d 505, 522 (4th Cir. 1999). As explained above, however, in ruling on a Rule 12(b)(6) motion, the court is to determine only whether a claim is stated and is not to resolve factual contests or examine the merits of affirmative defenses. Republican Party, 980 F.2d at 952. Rather, in ruling on such a motion, the court must "credit the plaintiff's allegation of the factual falsity of a statement." Chapin v. Knight-Ridder, Inc., 993 F.2d 1087, 1092 (4th Cir. 1993); see also Vaile v. Willick, No. 6:07-CV-11, 2008 WL 204477 (W.D.Va. Jan. 24, 2008) (stating that "[a]t the motion to dismiss stage, a plaintiff's allegation of factual falsity is accepted as true"); see also Fifth Third Bank of Indiana v. The Morley Group, LLC, No. 1:05-CV-0055-JDT-TAB, 2005 WL 4882768 (S.D.Ind. July 28, 2005) (holding that resolving issue of whether allegedly defamatory statements were true would be premature at Rule 12(b)(6) stage). The court therefore will not endeavor to determine the truth of defendants' statements.[1]

Similarly, defendants argue that the statements are not actionable on the basis of various privilege doctrines as well as constitutional limitations on defamation actions. These arguments, however, go to the merits of affirmative defenses. See R.H. Bouligny, Inc. v. United Steelworkers

---

[1] Defendants urge the court to take judicial notice of the truth of the statements at issue. Defendants assert the truth of Hill's statements pertaining to adverse health effects associated with PM2.5, submitting numerous studies and policy statements in support. Defendants also urge the court to take judicial notice of the truth of Darrell's statements pertaining to the "clouds of corruption" surrounding plaintiffs' business activities, pointing variously to court records and newspaper articles relating to the substance of Darrell's statements. The court declines to take judicial notice of these matters. The facts sought to be established are not the kind contemplated by Rule 201, as they are neither "generally known within the territorial jurisdiction of the trial court" or "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed.R.Evid. 201.

Lastly, defendants argue that Darrell's statements regarding the specifications and emissions of the proposed facility are true. In support, defendants refer to documents submitted by plaintiffs to regulatory agencies during the permit application process. The documents relied on by defendants are not "integral to and explicitly relied on in the complaint" as required by Phillips.190 F.3d at 618. The court therefore may not consider these documents in deciding this Rule 12(b)(6) motion.

6

of America, 270 N.C. 160, 173, 154 S.E.2d 344, 356 (1967) ("Privilege is an affirmative defense."). Such arguments are therefore premature at the Rule 12(b)(6) stage, where a motion to dismiss tests the sufficiency of the complaint and cannot generally reach the merits of an affirmative defense. See Goodman, 494 F.3d at 464; see also Beuster v. Equifax Information Services, 435 F.Supp.2d 471, 480 (D.Md. 2006) (holding that consideration of affirmative defense of privilege to defamation action is premature at Rule 12(b)(6) stage); see also Isuzu Motors Ltd. v. Consumers Union of U.S., Inc., 12 F.Supp.2d 1035, 1044 n. 1 (C.D.Cal. 1998) (noting that "it would be premature to determine, on a motion to dismiss, whether [plaintiff] is a public figure or whether the alleged statements were made with actual malice").

Defendants also argue that plaintiffs' slander claim is barred by the statute of limitations. A defense based on the statute of limitations must be raised through an affirmative defense, Fed.R.Civ.P. 8(c)(1), and the burden of establishing the affirmative defense rests on the defendant. Goodman, 494 F.3d at 464. A Rule 12(b)(6) motion, therefore, generally cannot reach the merits of a defense that a claim is time-barred. Id. The court may address the issue only if "all facts necessary to the affirmative defense clearly appear on the face of the complaint." Id. (internal citations omitted). Here, the facts necessary to the affirmative defense clearly appear on the face of the complaint.

Under North Carolina law, an action or proceeding for libel and slander must be commenced within one year after the cause of action has accrued. N.C. Gen. Stat. § 1-54(3). A cause of action for libel or slander accrues at the date of the publication of the defamatory words. See Gordon v. Fredle, 206 N.C. 734, 175 S.E. 126 (1934); see also Nimocks v. U.S., 12 F.3d 205 (4th Cir. 1993) (unpublished table decision). Here, plaintiffs allege that defendants made defamatory statements

7

on February 1, 2010, and that the videotaped statements were broadcast over the internet beginning on February 27, 2010, and viewed repeatedly thereafter. Plaintiffs' complaint was filed February 25, 2011.

Defendants base their statute of limitations argument on the date of the original statements, February 1, 2010, which clearly is outside of the one-year period prior the filing of the complaint. However, North Carolina case law makes clear that "each publication of defamatory material is a separate tort." Gibson v. Mutual Life Ins. Co. of N.Y., 121 N.C. App. 284, 287, 465 S.E.2d 56, 58 (1996) (citing Sizemore v. Maroney, 263 N.C. 14, 21, 138 S.E.2d 803, 808 (1964)). The complaint alleges that the statements were published on the internet beginning on February 27, 2010. Because plaintiffs' complaint was filed within the one-year limitations period, defendants' argument that plaintiffs' claim is time-barred is without merit. On similar facts, the Middle District of North Carolina held that a claim for defamation was not time-barred where the original defamatory statement was made years before the complaint was filed, but was republished within the year prior to filing. See Ouazzani-Chadi v. Greensboro News & Record, No. 1:06-CV-848, 2007 WL 1362389 (M.D.N.C. May 8, 2007).

For the foregoing reasons, defendants' Rule 12(b)(6) motion to dismiss is denied.

B.      Motion for Leave to File Amicus Brief

In support of defendants' motion to dismiss, the Sierra Club seeks leave to file an amicus brief to apprise the court on the current state of scientific knowledge regarding adverse health effects associated with an air pollutant known as PM2.5,[2] which pollutant was the focus of some of the alleged statements targeted by plaintiffs' claim for relief. Plaintiffs oppose the motion.

---

[2] PM2.5 is fine particulate matter with a diameter of 2.5 millimeters or smaller.

A district court has broad discretion to appoint amicus curiae, but amici status is typically granted when: (1) petitioner has a "special interest" in the particular case; (2) petitioner's interest is not represented competently or at all in the case; (3) the proffered information is timely and useful; and (4) petitioner is not partial to a particular outcome in the case. Sciotto v. Marple Newtown Sch. Dist., 70 F.Supp.2d 553, 554-55 (E.D.Pa. 1999). Where a party opposes the motion, the district court should "go slow in accepting" an amicus brief unless the amicus has "a special interest that justifies his having a say, or unless the court feels that existing counsel may need supplementing assistance." Strasser v. Doorley, 432 F.2d 567, 569 (1st Cir. 1970). Amicus briefs based on factual matters are disfavored, and "an amicus who argues facts should rarely be welcomed." Strasser, 432 F.2d at 569.

The Sierra Club's amicus brief provides a thorough overview of factual scientific matters relating to the purported truth of Hill's statements. As noted above, however, the inquiry is not one that is appropriate for resolution at the Rule 12(b)(6) stage, where the court is to determine only whether a claim is stated, and is not to resolve factual contests or determine the applicability of defenses. Republican Party, 980 F.2d at 952. The Sierra Club's motion for leave to file is therefore, respectfully, denied where the brief is not relevant to the matter now before the court.

## CONCLUSION

For the foregoing reasons, defendants' motion to dismiss (DE # 10) is DENIED. The Sierra Club's motion for leave to file amicus brief (DE # 14) is similarly DENIED.

SO ORDERED, this the 2nd day of September, 2011.

_____
LOUISE W. FLANAGAN
Chief United States District Judge